IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| COREY KEITH, | |
| Plaintiff, | |
| v. | 2:24-CV-010-Z-BR |
| TEXAS TECH MEDICAL CENTER, *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Paul A. Burch's Motion for Summary Judgment (the "Motion"). ECF No. 80. For the reasons stated below, the Motion is **GRANTED**.

**FACTUAL BACKGROUND**

The following facts are undisputed, except where otherwise noted:

1. On approximately June 17, 2023, Keith passed out in his cell from what he believes to be a hypoglycemic episode and fell face first into "a fixed object." ECF No. 108-2 at 1; ECF No. 84 at 234. Keith claims that the fall caused facial bruising, swelling around his eye, head pain, dizziness and unspecified "concussion-like" symptoms. ECF No. 108-2 at 1. He was taken to medical on June 21, 2023, where he explained his injuries to medical personnel, who reported:

> Left eye noted with bruising purplish green in color. Also observed scratches to left eyelid and a star[-]shaped scratch to corner of left eye. Bruising to left eye occurred 4 days ago. Offender stated, "I feel pain to my head to the left side." Offender able to follow finger without any difficulties. No nystagmus apparent. Pupils equal and reactive. No bruising or swelling to forehead, face, or scalp. ... Offender without complaints of blurry vision, able to see clear.

ECF No. 82 at 4; ECF No. 84 at 234; ECF No. 113 at 19.

2. Keith was given an appointment to see Defendant Paul A. Burch ("Burch"), a licensed physician's assistant at the Clements Unit on June 26, 2023. Keith missed the

appointment, so it was rescheduled for July 5, 2023. Keith also missed the rescheduled appointment. ECF No. 82 at 4-5; ECF No. 84 at 39; ECF No. 108-2 at 1. While Keith alleged in his Amended Complaint that Burch refused to see him because Keith was a few minutes late to the two appointments (which Keith attributed to his condition caused by the fall), his summary judgment evidence does not show that Burch refused to treat him on these dates. ECF No. 32 at 3-4; ECF No. 108-2 at 1. Instead, Keith's declaration states merely that he was marked as a "no show" when he was either too physically impaired to go, or not timely escorted by staff. ECF No. 108-2 at 1. Keith's declaration states that he was "turned away" from the second appointment when he was 5-10 minutes late, but he does not state that Burch turned him away or that Burch was even aware that he was there. *Id.*

3. On July 25, 2023, more than a month after his injury, Keith attended an appointment with Burch, where Keith says he reported persistent facial pain, pressure behind his eye, numbness, dizziness and headaches. *Id.*; ECF No. 113 at 17-18. He asked Burch to take his condition seriously, refer him for an x-ray, and give him a temporary work restriction because he believed that his symptoms made it unsafe to perform his assigned work. ECF No. 108-2 at 1-2. Keith states that Burch was irritated by Keith's request for a work restriction, but concedes that Burch ordered x-rays. ECF No. 108-2 at 2. Keith's complaint alleges that Burch authorized ibuprofen at this visit, although he allegedly withdrew the authorization after becoming irritated with Keith. ECF No. 32 at 4.

4. Burch, however, alleges that ibuprofen was neither requested nor authorized at any point during the visit. ECF No. 82 at 5. Burch examined Keith and reported that Keith had "mild discomfort to the palpitation of the left cheek" and no evidence of "redness, ecchymosis [excessive bruising] or edema." ECF No. 84 at 140-41. The medical report (also provided by Keith in support of his position) states that Keith told Burch that "most of the pain has gotten better since the swelling has gone down" but that Keith reported numbness

2

to his face. *Id.* at 140; ECF No. 113 at 17. Burch ordered x-rays of Keith's orbital bones and facial bones. ECF No. 84 at 141. During the examination, Burch found no clinical evidence to support a diagnosis of a concussion. ECF No. 82 at 5. Burch claims that Keith became irritated and argumentative after Burch told him that he would not provide a work restriction. *Id.* Burch states that work restrictions customarily are not given for subjective complaints; until there is a clinical correlation or diagnostic data to objectively support the inmate's complaint, work restrictions are not provided. *Id.*

  5. After his appointment with Burch, Keith received disciplinary cases on July 31, 2023, (one case) and August 10, 2023, (two cases) for failing to turn out for his work assignment on June 24 (before his appointment with Burch) and August 2 and 3 (after his appointment with Burch).[1] As a result of the two cases based on conduct occurring after Keith saw Burch, Keith lost good time credits (which was addressed in his concurrent habeas corpus case) as well as 23 days of commissary, 15 days of telephone privileges and 177 days of visitation. In addition, he was given 21 days of cell restriction. *Keith I* at ECF No. 27-1. Keith's Amended Complaint alleges that Burch's failure to treat him led to his custody classification changing from G2 to G4, which, Keith claims, affected his ability to obtain parole. ECF No. 32 at 4–5; ECF No. 108-2 at 2. However, records show that his custody classification was reduced only in connection with two disciplinary cases based on behavior

---

[1] Records in Keith's related habeas corpus action show that he received nine disciplinary cases around the time of his injury; however, seven of the cases were based on conduct occurring before Keith first saw Burch, and one of those was unrelated to failure to turn out for work. *See Keith v. TDCJ-CID*, Case No. 24-CV-033-Z-BR ("*Keith I*"), formerly pending in this Court, at ECF No. 27-1. The Court takes judicial notice of the records in *Keith I*. *See Sanders v. Univ. of Texas Pan Am.*, 776 F. App'x 835, 837 (5th Cir. 2019) (noting that "the district court did not err by taking such judicial notice. It is well settled that courts may take judicial notice of matters of public record"); *Joseph v. Bach & Wasserman, L.L.C.*, 487 Fed. App'x 173, 178 (5th Cir. 2012) ("[T]he court may take judicial notice of matters of public record. Here, the document referenced is a pleading filed with a Louisiana state district court, and it is a matter of public record.").

that occurred before Burch saw Keith for the first time.[2] *See Keith I* at ECF No. 27-1 at 27, 53. Keith provided no evidence that a work restriction from Burch on July 25 would have retroactively affected Keith's previous disciplinary charges or restored his custody classification.

6. Keith received x-rays on July 31, 2023, which showed a possible fracture of the nasal bone due to his nasal septum deviating to the left; a suspected mucosal thickening in the right maxillary sinus, and a possible nondisplaced fracture of the nasal bone. ECF No. 84 at 271-72. There was no definite orbital wall fracture or fracture of the paranasal sinuses. *Id.*

7. Burch also reviewed the x-rays and radiology report, stating:

> The x-rays also showed there was no definite orbital wall fracture or fracture of the paranasal sinuses. The x-rays indicated a possible non-displaced fracture of the nasal bone. This means the bone is in its original position and has not moved. The x-rays also noted leftward deviation of the nasal septum, which could represent a fracture. This definitively indicates that as of July 31, 2025 [sic], Mr. Keith did not have "numerous fractures about his face" nor did he have "a large piece of bone 'floating around' in his head" as he claims.

ECF No. 82 at 5.

8. Keith was scheduled for a follow-up appointment with Burch on August 16, 2023, to discuss his x-ray results; however, because Keith was in administrative segregation and no escort was available to take him to medical, Keith could not attend the appointment. *Id.* On August 21, before he could be seen for the rescheduled appointment, Keith was transferred to the Robertson Unit. *Id.* Keith's declaration confirms that he was placed in restrictive housing and transferred, which prevented follow-up with Burch. ECF No. 108-2 at 3. Keith provides no evidence of a causal connection between his medical situation and either placement in restrictive housing or his transfer.[3]

---

[2] Specifically, Keith's custody classification was reduced based on conduct occurring on June 27 and July 11, both well before he saw Burch for the first time.

[3] Keith's declaration also complains that his Hepatitis-C was not treated while he was housed

4

SUMMARY JUDGMENT STANDARD

**I. Summary Judgment Is Appropriate If There Is No Disputed Material Fact.**

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "must resolve all reasonable doubts in favor of the party opposing the motion." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The movant has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Anderson*, 477 U.S. at 256. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure all of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). The nonmovant then must provide affirmative evidence to defeat summary judgment. *Anderson*, 477 U.S. at 257. No "mere denial of material facts nor...unsworn allegations [nor] arguments and assertions in briefs or legal memoranda" will suffice to carry this burden. *Moayedi v. Compaq Comput. Corp.*, 98 F. App'x 335, 338 (5th Cir. 2004). The Court requires

---

at the Clements Unit. ECF No. 108-2 at 4. However, because Keith's Amended Complaint states no claim against Burch for failure to treat his Hepatitis-C, and because Keith's summary judgment evidence does not show that Burch was personally involved with any such failure to treat (other than the conclusory assertion that Keith was "under the care of Texas Tech medical staff, including PA Burch...."), the complaints regarding failure to treat his Hepatitis-C are irrelevant for the purposes of ruling on Burch's Motion and will not be considered by the Court.

5

"significant probative evidence" from the nonmovant to dismiss a request for summary judgment supported appropriately by the movant. *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001). The Court must consider all evidence but must not make any credibility determinations or weigh the evidence. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## II. Defendant's Qualified Immunity Defense Alters the Burden of Proof.

Burch moves for summary judgment on his affirmative defense of qualified immunity. "The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Argueta v. Jaradi*, 86 F.4th 1084, 1088 (5th Cir. 2023) (quoting *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc)). Once a defendant pleads qualified immunity, the plaintiff has the burden to establish that the defendant violated the plaintiff's clearly established federal rights. *Argueta*, 86 F.4th at 1088 (citing *Estate of Davis v. City of North Richland Hills*, 406 F.3d 375, 380 (5th Cir. 2005)). "This is a demanding standard." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015), *cert. denied*, 136 S. Ct. 1517 (2016). Because qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law, . . . we do not deny its protection unless existing precedent places the constitutional question beyond debate." *Argueta*, 86 F.4th at 1088 (internal marks and citation omitted).

"A qualified immunity defense alters the usual summary judgment burden of proof." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). "Once an officer pleads qualified immunity, it is the plaintiff's burden to establish that the officer violated the plaintiff's clearly established federal rights." *Argueta*, 86 F.4th at 1088. To trigger the qualified-immunity framework, however, the government official must "satisfy his burden of establishing that the challenged conduct was within the scope of his discretionary authority." *Sweetin v. City*

6

of Texas City,* 48 F.4th 387, 392 (5th Cir. 2022) (quoting *Cherry Knoll, L.L.C. v. Jones*, 922 F.3d 309, 318 (5th Cir. 2019)). For example, in *Sweetin*, the Fifth Circuit held this "oft-overlooked threshold requirement" was dispositive "because state law does not give a permit officer the authority to conduct stops of any kind." *Sweetin,* 48 F.4th at 392. In this case, however, Keith does not dispute that Burch was acting within the scope of his duties.

To determine if an official acting within the scope of his or her duties is entitled to qualified immunity, courts conduct a two-step analysis. First, they examine whether the plaintiff has shown a violation of a constitutional right under current law. *Bevill v. Fletcher*, 26 F.4th 270, 275 (5th Cir. 2022) (quoting *Benfield v. Magee*, 945 F.3d 333, 337 (5th Cir. 2019)). Second, if a violation has occurred, courts determine whether the right in question was "clearly established" at the time of the alleged violation, such that the officer was on notice of the unlawfulness of his or her conduct. *Id.* In short, an officer is entitled to qualified immunity "if there is no violation, or if the conduct did not violate law clearly established at the time." *Bailey v. Iles*, No. 22-30509, 2023 WL 8062239 at *2 (5th Cir. Nov. 21, 2023). Courts have the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

LEGAL ANALYSIS

**I. Failure to Provide Medical Care**

The U.S. Constitution requires that prison officials provide adequate medical care to inmates. *Rogers v. Boatright*, 709 F.3d 403, 409 (5th Cir. 2013). An inmate seeking to establish a constitutional violation based on a lack of medical care must allege facts showing that prison officials were deliberately indifferent to his serious medical needs. *Morris v. Livingston*, 739 F.3d 740, 747 (5th Cir. 2014) (explaining that because "only the 'unnecessary

and wanton infliction of pain' implicates the Eighth Amendment, a prisoner advancing such a claim must, at a minimum, allege 'deliberate indifference' to his 'serious' medical needs'") (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). Deliberate indifference "is an extremely high standard to meet." *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009) (internal quotation omitted) and requires satisfaction of both an objective and a subjective component. *Rogers*, 709 F.3d at 410. An inmate must first prove objective exposure to a substantial risk of serious bodily harm. *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006). As to the subjective component, an official acts with deliberate indifference only when he (1) knows the inmate faces "a substantial risk of serious harm" and (2) "disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Gobert*, 463 F.3d at 346; *see also Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999) (per curiam) (stating that prison official is not liable for denial of medical treatment unless he knows of and disregards an excessive risk to inmate health or safety).

An official's "failure to alleviate a significant risk that the official should have perceived, but did not, is insufficient to show deliberate indifference." *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001) (alterations and internal quotation omitted) (quoting *Farmer*, 511 U.S. at 838). "[D]eliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001). Instead, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Brewster*, 587 F.3d at 770 (quoting *Farmer*, 511 U.S. at 837); *see also Lawson v. Dallas Cnty.*, 286 F.3d 257, 262 (5th Cir. 2002) (holding that deliberate indifference is a "subjective inquiry," and inmate must show that the prison official was actually aware of risk of harm and consciously ignored it).

8

Allegations of malpractice, negligence, or unsuccessful treatment fail to establish deliberate indifference. *Gobert*, 463 F.3d at 346. Similarly, an inmate's disagreement with the medical treatment provided does not give rise to a constitutional claim. *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). Further, a delay in delivering medical care creates constitutional liability only where the alleged deliberate indifference results in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993). In sum, an inmate must demonstrate that prison staff "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs" to state a viable Eighth Amendment claim for deliberate indifference to serious medical needs. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

While Keith and Burch differ on several issues as to their one medical appointment, the salient question is whether Keith has provided evidence to create a material factual dispute as to whether Burch intentionally refused to treat a serious medical need. The parties agree that Burch examined Keith and authorized x-rays of his face, and they agree that the visit became contentious, although each blames the other for creating the problem. ECF No. 82 at 5; ECF No. 108-2 at 2. This dispute is immaterial. Even taking Keith's version of events as true, as the Court must do, Keith has failed to show that Burch intentionally failed to treat a "serious medical need."

Before reaching the question of deliberate indifference, courts must first investigate whether there was an objectively determinable serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert*, 463 F.3d at 345 n.12 (citing *Hill v. Dekalb Regional Youth Detention*

9

*Center*, 40 F.3d 1176, 1187 (11th Cir. 1994), *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002)); *see also Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004) ("[a] serious medical need is considered one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention") (internal quotation omitted); *Moreno v. Hidalgo County*, No. 7:24-CV-344, 2025 WL 2043946 at *9 (S.D. Tex. June 6, 2025) (same).

Undisputed medical records show that medical personnel reported seeing bruising along Keith's left eye, scratches to his left eyelid and a star-shaped scratch at the corner of his left eye, which Keith suffered from his fall that had occurred four days before his initial medical examination. At that time, Keith reported "pain to my head to the left side" but was able to follow the provider's finger without difficulty, had no rapid, uncontrollable eye movements, and his pupils were equal and reactive. He had no bruising or swelling to his forehead, face or scalp. ECF No. 84 at 234. More than one month after the injury, Burch examined Keith for the first time and reported that Keith had "mild discomfort to the palpitation of the left cheek" and no evidence of redness, excessive bruising or swelling, and no signs of a concussion. ECF No. 82 at 5; ECF No. 84 at 140–41. Keith's declaration states that, in his only visit with Burch, he reported "facial pain pressure behind [his] eye, numbness, dizziness and headaches." ECF No. 108-2 at 1. Keith told Burch that "most of the pain has gotten better since the swelling has gone down" but that he still had facial numbness. ECF No. 84 at 140–41.

Taking all these symptoms together, Keith has not shown a "serious medical need" that was ignored by Burch, even assuming Burch refused to provide ibuprofen and a work restriction, as alleged by Keith. *See Lockett v. Suardini*, 526 F.3d 866, 877 (6th Cir. 2008) (explaining that "minor lacerations and cuts" were not serious medical needs); *Davis v. Jones*, 936 F.2d 971, 972–73 (7th Cir. 1991) ("No reasonable person would believe that a one-inch

10

cut presents [a serious medical need] unless the injured person is a hemophiliac."); *Solis v. Gatson*, No. W-13-CV-375, 2016 WL 9686992, at *9 (W.D. Tex. June 22, 2016) (concluding "two cracked ribs, a small laceration over his eye, and bruises on his shoulder and knee" were not serious medical needs).

Keith contends that the x-rays, taken after Keith's appointment with Burch, corroborate Keith's "trauma" and "supports a finding that Burch knowingly disregarded a real medical risk." ECF No. 108 at 12. The Court disagrees. The x-rays showed no definite fracture; instead, they showed a possible non-displaced fracture of the nasal bone, which means that the bone was in its original position and had not moved. The x-rays further revealed a possible fractured septum because it deviated to the left. ECF No. 84 at 271-72. None of the x-ray findings indicate any external injuries that Burch noticed or should have noticed in his examination of Keith.

Keith has failed to provide evidence that Burch was aware of a serious medical need and intentionally failed to treat it. The undisputed evidence shows that Keith received treatment in the form of an examination and diagnostic x-rays. During their one visit, Burch examined Keith, found no sign of a concussion, saw no bruising or swelling, and nevertheless ordered x-rays. The medical reports (both Burch's report and the report made four days after Keith's injury) indicate that Keith's apparent injuries at the time Burch examined him were no more than *de minimis*. *See Gobert*, 463 F.3d at 347 n.24 (in reversing summary judgment denying qualified immunity, finding that "[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's [civil rights] allegations"); *Wilburn v. Shane*, 193 F.3d 517, 1999 WL 706141, at *1 (5th Cir. Aug. 20, 1999) (finding it "implausible that the hospital would not have recorded the severe injuries" that plaintiff alleged).

In short, Keith's complaint that Burch failed to give him ibuprofen and a work restriction is merely Keith's dissatisfaction with the medical treatment he received, which

does not state a constitutional violation. *See Winston v. Stacks*, 243 F. App'x 805, 807 (5th Cir. 2007) (per curiam) ("[Prisoner's] dissatisfaction with the treatment he received is insufficient to state a constitutional claim."); *McQueen v. Karr*, No. 02-10553, 2002 WL 31688891, at *1 (5th Cir. Oct. 29, 2002) (per curiam) (affirming dismissal of prisoner's claim based on "dissatisfaction with the treatment offered him"); *Garrett v. Sulser*, No. 6:17cv310, 2019 WL 8500862, at *7 (E.D. Tex. Nov. 4, 2019) (concluding that complaints alleging medical personnel "merely performed a 'cursory' examination" were nothing more than "disagreement and/or dissatisfaction with the medical treatment he received"), *adopted by* 2020 WL 562804 (E.D. Tex. Feb. 5, 2020); *Shipley v. Statton*, No. 1:08-CV-133-C ECF, 2009 WL 1469716, at *4 (N.D. Tex. May 27, 2009) ("[Plaintiff's] dissatisfaction and disagreement with the [care provided] . . . does not demonstrate that he was denied treatment."). The fact that Keith believes that his medical treatment was not as good as it should have been is not a cognizable complaint under Section 1983. *See Spears*, 766 F.2d at 181.

Further, the Supreme Court has recognized whether a particular form of treatment is necessary "is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. Even if a lapse in professional judgment occurred, any such failure would amount to no more than mere negligence or malpractice, and not a constitutional violation. *See Harris*, 198 F.3d at 159 (citing *Mendoza*, 989 F.2d at 195). It is clear there is disagreement between Keith and Burch over the level of care he has received; but a prisoner's disagreement with a health care provider's assessment is insufficient to establish deliberate indifference. *See Gobert*, 463 F.3d at 346. Accordingly, Keith does not establish that he was denied care with deliberate indifference in violation of the Eighth Amendment. *See Pearson*, 555 U.S. at 236. Burch is entitled to summary judgment on Keith's Eighth Amendment claim.

## II. Retaliation

Keith asserts that Burch retaliated against him after becoming irritated with Keith for requesting a work restriction and an x-ray. Specifically, Keith alleges that Burch withdrew his previous authorization to provide Keith with ibuprofen to treat his head injury. He further alleges that Burch then cleared Keith for work without providing any medical treatment. ECF No. 32 at 4. When an inmate claims that he has been the subject of retaliation, he must show facts, not merely conclusions. *Whittington v. Lynaugh*, 842 F.2d 818 (5th Cir.), *cert. denied*, 488 U.S. 840 (1988). The plaintiff must present facts showing a retaliatory motive or the alleged conduct must itself raise an inference of retaliation to support a claim. *Id.* at 819. "The prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995).

"A valid retaliation claim requires a plaintiff to allege that: (1) he exercised a specific constitutional right; (2) the defendant intended to retaliate against him because he exercised that right; (3) he experienced a retaliatory adverse act; and (4) the adverse act would not have occurred but for a retaliatory motive." *Welsh v. Cammack,* No. 23-10961, 2024 WL 3649583 at *5 (5th Cir. 2024) (citing *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999)). The Fifth Circuit has defined an actionable retaliatory adverse act as one "capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006). A plaintiff must offer direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred. *Woods*, 60 F.3d at 1166. "Mere conclusionary allegations of retaliation" are insufficient. *Id.;*

*see also Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (Conclusory allegations amounting to a plaintiff's "personal belief that he is the victim of retaliation" are insufficient to state a claim for relief). Causation requires a showing that "but for the retaliatory motive the complained of incident . . . would not have occurred." *McDonald*, 132 F.3d at 231 (citation omitted).

Keith provides merely conclusory allegations to support his retaliation claim. Assuming his assertion is true that Burch refused to provide ibuprofen and a work restriction because he was irritated with Keith, and further assuming that requests for such treatment by Keith constituted the exercise of a constitutional right to medical care, Burch's conduct does not constitute a "retaliatory adverse act." The undisputed facts show that Burch did not withhold medical care because of Keith's requests; he still ordered x-rays and examined Keith. *See* ECF No. 113 at 17-18. Further, Keith has provided no evidence that refusal to provide ibuprofen and a work restriction were acts "capable of deterring a person of ordinary firmness from further exercising his constitutional rights." It certainly did not deter Keith, whose medical records continued to show that he requested—and received—treatment at other units after his transfer. *See, e.g.*, ECF No. 113 at 4-16. Keith provided no direct evidence that Burch intended to retaliate against Keith because Keith requested medical care. As noted above, Keith received medical care; he simply did not agree with the care he received. Keith has failed to create a material fact question sufficient to defeat Burch's right to summary judgment on Keith's retaliation claim.

### III. Qualified Immunity

Even if Burch's conduct resulted in a violation of Keith's constitutional rights (as discussed above, it did not), Burch's conduct was objectively reasonable in light of clearly established law. "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix*

*v. Luna*, 577 U.S. 7, 11 (2015) (internal quotation omitted). There are two ways for a plaintiff to demonstrate that a defendant's conduct violated clearly established law. *Batyukova v. Doege*, 994 F.3d 717, 726 (5th Cir. 2021). Under the first, more typical approach, the plaintiff must "identify a case" or "body of relevant case law" in which "an officer acting under similar circumstances . . . was held to have violated the Constitution." *Id.* (cleaned up). While there need not be a case directly on point, the unlawfulness of the challenged conduct must be beyond debate. *Id.* Under the second approach, there can be the rare "obvious case," where the unlawfulness of the officer's conduct is so egregious that it is sufficiently clear although existing precedent does not address similar factual circumstances. *See Doege*, 994 F.3d at 726 (citing *Dist. of Columbia v. Wesby*, 538 U.S. 48, 65 (2018)); *see also Brosseau v. Haugen*, 543 U.S. 194, 199 (2004).

"In determining what constitutes clearly established law, [the Fifth Circuit] looks to Supreme Court precedent and then to [its] own." *Hicks v. LeBlanc*, 81 F.4th 497, 503 (5th Cir. 2023), (quoting *Shumpert v. City of Tupelo*, 905 F.3d 310, 320 (5th Cir. 2018)). When there is no direct controlling authority, "[the Fifth Circuit] may rely on decisions from other circuits to the extent that they constitute a robust consensus of cases of persuasive authority." *Id.* "It is the plaintiff's burden to find a case in his favor that does not define the law at a high level of generality." *Rich v. Palko*, 920 F.3d 288, 294 (5th Cir. 2019).

This is not the rare "obvious case" in which the unlawfulness of the defendant's conduct is so egregious that it is sufficiently clear such actions violate a prisoner's rights. Keith cites two cases that he alleges show Burch violated his clearly established rights: *Estelle v. Gamble*, 429 U.S. 97 (1976) (deliberate indifference) and *Johnson v. Rodriguez*, 110 F.3d 299 (5th Cir. 1997) (retaliation). To give Keith every opportunity, the Court also analyzes two cases Keith cites in another section of his brief to determine if they show Burch

15

violated a clearly established right: *Easter v. Powell*, 467 F.3d 456, 464 (5th Cir. 2006), and *Harris*, 198 F.3d at 159–60. None of these cases support Keith's position beyond a "high level of generality."

In *Estelle v. Gamble*, the Supreme Court held that deliberate indifference to serious medical needs of prisoners violates the Eighth Amendment. 429 U.S. 97, 104 (1976). But the Court went on to find that a doctor who did not order an X-ray as part of treatment for a lower back problem did not act with deliberate indifference. *Id.* at 107–08. The facts in this case are different—Burch did order an x-ray as part of Keith's medical treatment. In any event, the doctor's medical decisions in *Estelle* did not violate the plaintiff's constitutional rights, so they do not show that Burch's decisions did—let alone that a violation was "clearly established."

In *Johnson v. Rodriguez*, the plaintiff alleged that the Board of Pardons and Paroles retaliated against him by relying on information about his tendency to file lawsuits—and help other prisoners do the same—in his parole files in denying him parole. 110 F.3d 299, 309–10 (5th Cir. 1997). Again, the facts of this retaliation claim are very different than the facts in this case—the alleged retaliation in *Johnson* was not for medical care at all. And the *Johnson* plaintiff's retaliation claim was ultimately found unmeritorious. *Id.* at 314. A failed retaliation claim on a completely different set of facts does no work to establish that Burch violated a clearly established right.

In *Easter*, the Fifth Circuit affirmed the trial court's denial of the defendant's summary judgment motion on qualified immunity because the defendant "knew that [the defendant] (1) had a heart condition, (2) was experiencing severe chest pain, and (3) did not have his prescribed heart medication." *Easter*, 467 F.3d at 463. Further, the inmate's prior heart problems were "well-documented" in his medical chart and indicated that he had heart

16

disease and had suffered a heart attack. *Id.* Nevertheless, the defendant returned the inmate to his cell without providing any treatment for his severe ongoing chest pain. *Id.* Conversely, Keith was not suffering potentially life-threatening symptoms; instead, he told Burch that he was suffering persistent "facial pain, pressure behind his eye, numbness, dizziness and headaches" from an injury he had suffered more than a month earlier, yet he presented with only "mild discomfort to the palpitation of the left cheek" with no evidence of redness, excessive bruising or swelling, and no concussion symptoms. ECF No. 82 at 5. In short, Keith presented no evidence that he was suffering a potentially life-threatening, time-sensitive situation during his appointment with Burch. Accordingly, *Easter* does not support Keith's claim that Burch is not entitled to qualified immunity.

Finally, *Harris* also does not support Keith's position. In *Harris*, an inmate had suffered a broken jaw that had been set with wires. After the wires were removed, the jaw shifted and fell out of place, thereby causing him excruciating pain and preventing him from eating solid food. *Harris*, 198 F.3d at 154. The court, in holding that Harris had stated a claim (and not addressing qualified immunity), noted that the defendants "ignored his urgent and repeated requests for immediate medical treatment for his broken jaw and his complaints of excruciating pain. Harris alleges facts demonstrating that all three defendants were made aware of, and disregarded, a substantial risk to Harris's health when they denied him treatment." *Id.* at 159-60. While Keith alleges that he made numerous requests for medical care, there is evidence of only one such request reaching Burch (the July 25, 2023, examination). Burch examined Keith and referred him for a diagnostic x-ray. Keith has not provided evidence that Burch was aware of and disregarded a substantial risk to Keith's health, as set forth above.

Keith failed to meet his burden to show that Burch should have known that his conduct violated clearly established law. Accordingly, Burch is entitled to summary judgment on his defense of qualified immunity.

For the reasons stated above, Burch's Motion for Summary Judgment is **GRANTED**.

**SO ORDERED.**

March 4, 2026

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE